# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| CHRISTINA RAGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:13-6018-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Christina Ragle ("Ragle") seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq*. The Administrative Law Judge ("ALJ") found that although Ragle suffered from severe impairments of morbid obesity, pseudotumor cerebri,[1] and bilateral carpal tunnel syndrome, she retained the residual functional capacity ("RFC") to perform light work with certain restrictions. Relying on the testimony of a vocational expert, the ALJ found Ragle could perform work as a storage facility rental clerk, sales attendant, and gate guard.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Pseudotumor cerebri is a condition of the brain simulating the presence of an intracranial tumor. It is commonly associated with obesity in young females. PDR Medical Dictionary 1455 (1st ed. 1995).

Plaintiff filed her application for disability insurance benefits on April 20, 2010, alleging a disability onset date of February 1, 2010. The onset date was subsequently amended to April 1, 2010, the day after her last date at work. R. at 15, 244, 275. The Commissioner denied Plaintiff's application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing at which the Plaintiff testified, and on November 18, 2011, the ALJ issued her decision holding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on December 18, 2011, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

**Analysis**

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2] Plaintiff contends the ALJ erred at step four in determining her RFC and should reverse or remand the Commissioner's decision because: (1) the ALJ did not properly analyze her treating doctor's opinion; and (2) the ALJ's credibility assessment is not supported by substantial evidence on the record. The Court finds no merit to either argument.

At the outset, the Court notes that the ALJ's decision was influenced by the fact that Plaintiff, a certified nurse's assistant, worked up until the day her employer, a state veteran's home, terminated her for failing to timely pay her state income taxes. R. at 18. While Plaintiff contends she experienced disabling medical problems before her termination, the ALJ noted that Plaintiff attempted to get re-hired, but the veterans home was not permitted to rehire her. R. at 18. The ALJ found

> the circumstances surrounding the claimant's departure from work
> on the amended alleged onset date are not fully consistent with her
> general allegations of disability since that time. According to the

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

3

> claimant's testimony, she stopped working as a certified nurse's assistant in April 2010 for reasons not related to her allegedly disabling impairments. . . According to the claimant's testimony, her former employer denied her request for reinstatement for reasons that do not relate to her medical condition. The facts set forth above detract somewhat from the credibility of the claimant's statements on the current application and appeal.

R. at 19. With that in mind, the Court turns to Plaintiff's specific arguments.

**A.     The ALJ did not err in weighing the opinion of Plaintiff's treating physician.**

Plaintiff's first argument is that the ALJ erred in assessing the opinion of her treating physician, Dr. Theodore Rights, M.D., in determining her RFC. Dr. Rights opined that Plaintiff's impairments limited her to standing two hours out of eight and sitting no more than two hours out of eight, and that her impairments also required her to take additional breaks due to pain and dizziness, and interfered with her concentration, persistence, and pace in performing work. R. at 456-59. He also opined that because of her impairments, she would miss an average of two workdays per month. R. at 460.

Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). An ALJ cannot give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques or is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). If the opinion cannot be given controlling weight, the ALJ should give it significant or substantial weight based on the above factors. *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011). The "opinion does not automatically control in the face of other

4

credible evidence on the record that detracts from that opinion." *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009). "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise*, 641 F.3d at 925.

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

Here, the ALJ held that Dr. Rights' opinion was not entitled to controlling weight because it was "neither consistent with nor well-supported by other evidence in the record." R. at 20. The ALJ gave "no weight" to Dr. Rights' opinion because: (1) he was not a specialist; (2) his opinion contradicted her self-reported activities of daily living; and (3) his opinion was inconsistent with the "well-explained, well-supported" opinion of the medical expert, Dr. Debolt,[3] M.D., a board-certified neurologist. R. at 20-21.

The ALJ's finding is supported by the record. Dr. Rights' opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques. For example, his opinion is inconsistent with normal computed tomography and magnetic resonance imaging of Plaintiff's head. R. at 288-89, 342, 357, 458. Dr. Rights' opinion is also inconsistent with the other substantial evidence in the record. The record shows that Plaintiff continued working literally up to the day she alleges she became disabled. R. at 244, 275. But she did not stop working because of any medical problem; she stopped working because she was terminated for failing to timely pay her state income taxes. R. at 19, 49-50. Contrary to Plaintiff's claims, the record

---
[3] The record does not indicate what Dr. Debolt's first name is.

indicates Plaintiff was capable of working. She was regularly alert and oriented, had normal strength, sensation, and reflexes; she could walk without assistance; and while she suffered from some loss of vision, it did not impact her ability to work because it did not affect both eyes. R. at 41, 281, 285, 336, 341, 442, 462-63, 472.

Accordingly, the ALJ did not err in weighing the conflicting medical opinions.

**B.      The ALJ's credibility determination is supported by the record.**

Next, Plaintiff argues the ALJ's credibility assessment is not supported by substantial evidence. Plaintiff asserts the ALJ failed to discuss the reasons for her credibility determination in sufficient detail. Plaintiff contends that other than noting the circumstances under which her last job ended, the ALJ discussed her credibility only in stating her testimony was credible only to the extent it was consistent with the ALJ's RFC assessment.

When the ALJ discounts a claimant's credibility, she is required to explain why she did not fully credit the claimant's complaints. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).

In the present case, contrary to Plaintiff's claims, the ALJ did consider the *Polaski* factors, her activities of daily living, and her routine treatment.[4] R. at 18-20. For example, the ALJ properly considered the intensity of her symptoms and aggravating factors. After noting that Plaintiff testified that she was bothered by standing and walking and also experienced constant dizziness, all-day headaches, blurred vision, and sensitivity to light, the ALJ discussed the medical expert's observation that Plaintiff showed no impairment in sitting, standing, or walking. R. at 20. The ALJ also observed that Plaintiff's allegations of severe headaches were undermined by the fact that she takes over-the-counter medication rather than narcotic-based prescription medications as treatment. R. at 20. It is well-established that "[a] claimant's allegation of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000).

Finally, the ALJ did not err in noting that Plaintiff stopped working for reasons unrelated to her health. The fact that Plaintiff was terminated for failing to timely pay her taxes and then attempted to get re-hired—which suggests she believed she was capable of working—detracts from her credibility. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

Consequently, the ALJ's credibility determination is supported by substantial evidence.

## Conclusion

For the reasons discussed above, the Court finds the Commissioner's determination is supported by substantial evidence on the record. The Commissioner's decision is AFFIRMED.

---

[4] Although Plaintiff is correct that the ALJ did not discuss the positive aspect of her long history, namely that she was employed in the same job for more than a decade, this error is harmless. The ALJ discussed the relevant portion of part of her work history, namely the fact that she worked up until the day she was fired for reasons unrelated to any medical problems. Indeed, Plaintiff's continuous work history from 1999 through her termination actually *bolsters* the ALJ's conclusion that Plaintiff was not disabled. It supports an inference that Plaintiff applied for disability payments only because her employer fired her and refused to re-hire her. Thus, the ALJ's failure to discuss her good work history is at most a deficiency in opinion writing technique which did not affect the outcome.

**IT IS SO ORDERED.**

Date:     March 4, 2014                             /s/ Greg Kays
                                                    GREG KAYS, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT